**United States District Court**
For the Northern District of California

1

2

3

4

5    UNITED STATES DISTRICT COURT

6    NORTHERN DISTRICT OF CALIFORNIA

7    TIANA FARRIES,                                    No. C- 06-1656 (JCS)

8         Plaintiff(s),                                **ORDER GRANTING IN PART AND
                                                         DENYING IN PART MOTION TO**
9         v.                                           **DISMISS OR TRANSFER ACTION AND
                                                         REQUEST FOR SANCTIONS AND**
10   IMPERIAL MAJESTY CRUISE LINE,                     **TRANSFERRING ACTION TO THE
                                                         SOUTHERN DISTRICT OF FLORIDA**
11        Defendant(s).                                **[Docket No.  13]**
     _____/

12

13   **I.      INTRODUCTION**

14          Plaintiff, Tiana Farries, alleges that she injured her arm while aboard the Regal Empress, a

15   cruise ship operated by Defendant Imperial Majesty Cruise Line ("Imperial").  She sued Imperial for

16   maritime negligence and breach of contract in the United States District Court for the Northern

17   District of California.  Imperial brings a Motion to Dismiss or Transfer Action and Request for

18   Sanction (the "Motion"), asking that the action be dismissed or transferred to the Southern District

19   of Florida in accordance with a forum selection clause included in Imperial's Passenger Ticket

20   Contract ("ticket").  A hearing on the Motion was held on June 16, 2006, at 9:30 a.m.  Subsequently,

21   the Court held an evidentiary hearing to determine whether Plaintiff had a reasonable opportunity to

22   read the ticket.  For the reasons stated below, the Court concludes that the forum selection clause in

23   the ticket is enforceable, and therefore GRANTS the Motion in part.  Defendant's request for

24   sanctions is DENIED.  This case shall be transferred to the Southern District of Florida.

25   **II.     BACKGROUND**

26           **A.      Declarations by the Parties**

27          Tiana Farries and her sister, Kolesha Farries, are residents of California.  Declaration of

28   Tiana Farries in Support of Opposition to Defendant's Motion to Dismiss ("Tiana Farries Decl.") at

**United States District Court**
For the Northern District of California

1    ¶ 2; Declaration of Kolesha Farries in Support of Opposition to Defendant's Motion to Dismiss

2    ("Kolesha Farries Decl.") at ¶ 2.  According to Tiana Farries, she and her sister arrived in Ft.

3    Lauderdale, Florida, on March 2, 2005, to take a cruise on the Regal Empress that left port on

4    March 3, 2005.  Tiana Farries Decl. at ¶ 2.  Tiana Farries stated in a sworn declaration filed in

5    support of her opposition to the Motion that she was never given a copy of the ticket containing the

6    forum selection clause prior to boarding the ship.  Tiana Farries Decl., ¶9.  In particular, she

7    recounted that on the day of the cruise, she and her sister went to Port Everglades, where they

8    entered a building in which people were filling out paperwork.  *Id.*, ¶ 7.  Tiana Farries stated that she

9    informed an Imperial employee that she did not have her ticket.  *Id.*  This person then escorted Tiana

10   Farries to the front of a line and returned with a stack of papers for her to complete.  *Id.*  Tiana

11   Farries recalled that the papers related to customs or immigration and included a form concerning

12   whether she was bringing alcohol on board.  *Id.*  She stated that she did not see the passenger ticket

13   contract, although she acknowledged that the signature on the "Ship's Copy" of the ticket, produced

14   by Imperial, is hers.  Tiana Farries Decl. at ¶ 12.  Tiana Farries further stated that she was not given

15   copies of any of the papers that she signed.  *Id.*, ¶ 8.

16       Imperial challenges Tiana Farries' account, asserting that on the day of the cruise, "no

17   passenger was permitted to board Regal Empress without a Passenger Contract Ticket and therefore,

18   Tiana Farries must have been given her ticket.  Declaration of Earl Pitman in Support of Motion to

19   Dismiss ("Pitman Decl.") at ¶ 5.  It also asserts that on March 3, 2005, "one passenger in each cabin

20   was required to sign the face of his/her Passenger Ticket Contract to reflect receipt of the Passenger

21   Ticket Contract."  *Id.*  In support of the Motion, Imperial provided a copy of what appears to be page

22   three of the ticket with Tiana Farries' signature on it.  Pitman Decl., Exhibit B.

23       Imperial also provided a color copy of its standard ticket.  Declaration of Stephanie Servaites

24   in Support of Defendant's Motion for Dismissal or Transfer and Request for Sanctions ("Servaites

25   Decl."), Exhibit A.  The ticket cover lists basic passenger information and in the lower right-hand

26   corner in red ink reads "AGENTS COPY - NOT GOOD FOR PASSAGE."  *Id.*  Page two includes

27   Imperial's logo on the left half of the page and under it again reads  "AGENTS COPY - NOT

28   GOOD FOR PASSAGE."  *Id.*  The right side of page two includes a box with the following text in

     1/8" font:

                                              2

**United States District Court**
For the Northern District of California

1   IMPORTANT THAT YOU READ: This is your ticket contract. It is
2   important that you read all of the terms and conditions of this contract.
    Your attention is particularly drawn to the exemptions and limitations
3   of the carrier's liability. By accepting this ticket, the passenger and/or
    purchaser agrees to its terms or conditions on his own behalf and also
    on behalf of any other person or persons for whom this ticket is
4   purchased as his, her, or their agent (whether or not signed.)

5   *Id.* Directly underneath this text is a signature line. *Id.* Page three is a replica of the cover page

6   with the words "SHIPS COPY" in red ink substituted for the "AGENTS COPY" language. *Id.*

7   Page four is again a replica of the cover page, only this time with the words "PASSENGERS COPY

8   - NOT GOOD FOR PASSAGE" printed in the right-hand corner. Pages five through eight include

9   the 34 terms of the ticket. Term 12, located on page six, written in bold, 1/16" font, includes a

10  forum selection clause that reads:

11          It is agreed by and between the passenger and the carrier that all
            disputes and matters whatsoever arising under, in connection with, or
12          incident to, this contract shall be litigated, if at all, in a court located in
            Broward County, State of Florida, U.S.A or the United States District
13          Court, Southern District of Florida, U.S.A. to the exclusion of the
            courts of any other state or elsewhere in the state of Florida.
14

15  *Id.*

16          **B.      The Motion**

17          Imperial filed this motion seeking the following relief: 1) dismissal or transfer of the action

18  pursuant to forum selection clause; 2) dismissal of Plaintiff's claim for Breach of Contract for Safe

19  Passage on the basis that it fails to state a claim upon which relief can be granted; and 3) sanctions

20  against Plaintiff's counsel because, by filing the complaint in this Court, rather than in Florida,

21  plaintiff unreasonably multiplied the proceedings.

22          In her opposition, Plaintiff argues that the forum selection clause should not be enforced,

23  both because she did not have an opportunity to read the ticket and because the forum selection

24  clause was not sufficiently conspicuous. She argues further that her claim for Breach of Contract of

25  Safe Passage is cognizable. Finally, she rejects Imperial's position that sanctions should be

26  imposed, arguing that counsel has acted reasonably in challenging the enforceability of the forum

27  selection clause and that in any event, the request for sanctions is improper because it was not made

28  in a separate motion as required under Civil Local Rule 7-2.

**United States District Court**

For the Northern District of California

1  **III.    FINDINGS OF FACT**

2          1.      Three witnesses were called to testify at the August 15, 2006 Evidentiary Hearing:

3  Mr. Earl Pitman, a pier supervisor for Defendant; Plaintiff, Tiana Farries; and Plaintiff's sister,

4  Kolesha Farries.  The Court had the opportunity to observe each of these witnesses, and their

5  demeanor, recollections, and other matters bearing on credibility.  The Court found Mr. Pitman to be

6  a credible witness with an excellent command of facts regarding the procedures for check-in at the

7  Port Everglades Terminal.  On the other hand, Kolesha Farries' and Plaintiff's memories of certain

8  events in question were poor, and, as a result, the Court has determined that their recollections of the

9  events are not credible.  The Court should note that it has not made a determination that either

10  Plaintiff or her sister were in any way dishonest, but only that, based on their testimony, their

11  memories of the events are not reliable.

12          2.      It is the normal practice of Defendant to provide passengers with a ticket booklet, a

13  sample of which was marked as "Exhibit 2" at the hearing.  That ticket booklet contains the terms of

14  the contract at issue in this matter.  One ticket was issued for each cabin.  Prior to boarding, all

15  passenger are required to sign page two of the ticket, indicating agreement to the terms and

16  conditions of the contract.  In signing page two, a carbon imprint of the signature is made on page

17  three of the ticket.  Once the ticket has been signed, the pink passenger's copy, along with the terms

18  and conditions, is returned to the passenger.  Mr. Pitman testified that, in his experience, this

19  procedure was always followed and he had never heard of a circumstance where it had not been

20  followed.

21          3.      At the terminal, before boarding, Plaintiff was given a ticket booklet, which included

22  all of the terms and conditions of the contract.  Plaintiff signed page two of the ticket booklet,

23  producing a carbon imprint of her signature on page three.  *See* Hearing Exhibit 3 (showing carbon

24  imprint of Plaintiff's signature on page three).   By signing that page, Plaintiff agreed to the terms of

25  the ticket, and was advised that it was "IMPORTANT" that she read the ticket because it contained

26  the terms and conditions of the contract.  The passenger's copy of the ticket, along with the terms

27  and conditions of the contract, were returned to Plaintiff and her sister.

28

4

United States District Court

For the Northern District of California

1     4.     Plaintiff had a meaningful opportunity to review the terms and conditions of the

2  ticket contract both before and after she boarded the vessel.  Mr. Pitman testified that there were

3  three stages to the check-in procedure, that each stage took from a minimum of 15 minutes to a

4  maximum of 30 minutes to complete.  In a typical case, according to Mr. Pitman, a passenger had

5  possession of the ticket booklet, including the contract terms, for as long as 15 minutes between

6  Stages Two and Three, and 30 minutes during Stage Three, as well as indefinitely after the

7  passenger boarded the vessel.  As Mr. Pitman explained, during the time spent checking in a

8  passenger was either waiting for other passengers to be served or was herself in the process of

9  registering with the ticket agents.  Plaintiff and her sister confirmed that there was a line and that

10  other passengers were checking in at the same time as Plaintiff and her sister.  In light of these facts,

11  and the poor memories of Plaintiff and her sister, their testimony that the entire check-in process

12  took five to 10 minutes and that they did not receive a copy of the ticket booklet including terms, is

13  not credible.  To the contrary, the Court finds that Plaintiff had the opportunity to review the terms

14  of the contract for substantially more than 10 minutes before she boarded the ship.  Although they

15  do not recall it, the Court concludes that Plaintiff and her sister had possession of the ticket and

16  contract terms for review even after boarding.

17  **IV.     ANALYSIS**

18          **A.     Legal Standard**

19          A motion to dismiss premised on enforcement of a forum selection clause should be treated

20  as a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3).  *Walker*

21  *v. Carnival Cruise Lines*, 63 F. Supp. 2d 1083, 1086 (N.D. Cal. 1999) (citing *Arguenta v. Banco*

22  *Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996)).  The court does not have to accept the pleadings

23  as true and may consider facts outside of the pleadings.  *Murphy v. Schneider Nat'l, Inc.,* 362 F.3d

24  1133, 1137 (9th Cir. 2004).  If resolution of a Rule 12(b)(3) motion depends on facts that are

25  genuinely disputed, the court can hold an evidentiary hearing to resolve this dispute.  *Id*. at 1139-

26  1140.  "Whether to hold a hearing on disputed facts and the scope and method of the hearing is

27  within the sound discretion of the district court."  *Id*. at 1139.  "Upon holding an evidentiary hearing

28

**United States District Court**

For the Northern District of California

1   to resolve material disputed facts, the district court may weigh evidence, assess credibility, and make

2   findings of fact that are dispositive on the Rule 12(b)(3) motion." *Id*. at 1140.

3             **B.**          **Enforceability of Forum Selection Clause**

4         Forum selection clauses in passenger ticket contracts are presumptively valid when the

5   plaintiff received adequate notice of the clause. *Carnival Cruise Lines, Inc., v. Shute*, 499 U.S. 585

6   (1991). The First Circuit addressed the question of what constitutes adequate notice in *Shankles v.*

7   *Costa Armatori, S.P.A.*:

8           The basic inquiry is whether, and to what extent, a passenger, who in
    almost all cases does not actually bargain for a particular term or

9           condition of a contract, but who nevertheless accepts or signs the
    ticket before embarkation, is bound by the fine print of the ticket.

10          Recent cases reflect that courts examine the entire ticket to answer the
    question: Does the contract reasonably communicate to the passenger

11          the existence therein of important terms and conditions which affect
    legal rights?

12

13  722 F.2d 861, 863-64 (1st Cir. 1983) (citation omitted). The First Circuit proceeded to articulate a

14  two-pronged test to determine whether terms included in passenger tickets are "reasonably

15  communicated." *Id.* at 864-67. First, courts consider "features such as size of type,

16  conspicuousness and clarity of notice on the face of the ticket." *Id.* Second, courts consider the

17  "extrinsic factors indicating the passenger's ability to become meaningfully informed of the

18  contractual terms at stake." *Id*. at 866. In particular, under this prong, courts consider "the

19  passenger's familiarity with the ticket, the time and incentive under the circumstances to study the

20  provisions of the ticket, and any other notice that the passenger received outside of the ticket." *Id.*

21  The Ninth Circuit has adopted the "reasonable communicativeness" test set forth in *Shankles*. *Deiro*

22  *v. Amer. Airlines*, 816 F.2d 1360, 1364 n.3 (9th Cir. 1987).

23        Here, both prongs of the reasonable communicativeness test are met. First, the forum

24  selection clause is sufficiently conspicuous to satisfy prong one. Although the clause is in small

25  print (only 1/16"), it is legible and is made conspicuous by the fact that it is in bold face. *See Wallis*

26  *v. Princess Cruises, Inc.,* 306 F.3d 827, 836 (9th Cir. 2002) (holding that although contractual clause

27  was small, it was nonetheless enforceable because it was in a section containing several warning

28  headlines reminding the passenger to read the section). More importantly, page two of the ticket,

**United States District Court**

For the Northern District of California

1    which precedes the forum selection clause, warns the passenger in large type that the ticket is

2    "IMPORTANT" and expressly states that "[i]t is important that you read all the terms and conditions

3    of this contract."  *See id.*  It goes on to warn the passenger that the ticket contains "exemptions and

4    limitations on the carrier's liability."  These warnings provided Plaintiff with sufficient notice that

5    she was agreeing to such limitations, including the forum selection clause.

6            Second, the extrinsic circumstances support the conclusion that Plaintiff had sufficient notice

7    of the forum selection clause.  As stated above, the Court finds, based on the testimony presented at

8    the evidentiary hearing, that Plaintiff not only signed page two of the ticket but also was given a

9    copy of the ticket, including the terms and conditions, which she could have read either during the

10   lengthy check-in procedure or following check-in.  Therefore, prong two of the reasonable

11   communicativeness test also is met.  *See Osbourn v. Princess Tours, Inc.*, No. H-94-3516, 1995 WL

12   686632 (S.D. Tex. June 30, 2005) (holding that where passenger had ticket in her possession some

13   time before boarding, she had ample opportunity to examine its contents); *Lemoine v. Carnival*

14   *Cruise Lines*, 854 F. Supp. 447, 449 (E.D. La. 1994) (holding that passenger had sufficient

15   opportunity to read the ticket where ticket was given to passenger's brother before departure).

16           For the foregoing reasons, the Court concludes that the forum selection clause is enforceable.

17   **D.      Whether to Transfer or Dismiss Action**

18           Pursuant to 28 U.S.C. § 1406, "[t]he district court of a district in which is filed a case laying

19   venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such

20   case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  In cases

21   concerning enforcement of forum selection clauses, transfer is usually found to be in the interest of

22   justice "because normally dismissal of an action that could have been brought elsewhere is 'time

23   consuming and justice-defeating.'"  *Flake v. Medline Indus., Inc.*, 882 F. Supp 947, 952 (E.D. Cal.

24   1995) (quoting *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990)).  Because requiring Plaintiff

25

26

27

28

**United States District Court**

For the Northern District of California

1    to refile her action in the Southern District of Florida would be inefficient, the Court concludes that

2    transfer to that district is in the interest of justice.[1]

3           **E.**     **Sanctions**

4    Imperial moves for sanctions pursuant to 28 U.S.C. § 1927.  This statute reads:

5
6
7
> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally such excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

8    Although the Court agrees with Defendant that the forum selection clause is enforceable, Plaintiff's

9    counsel did not act unreasonably in filing in this Court.  The request for sanctions is DENIED.

10   **V.**     **CONCLUSION**

11         The Motion is GRANTED as to Defendant's request to transfer.  Defendant's request for

12   sanctions is DENIED.  The court declines to rule on Defendant's argument that Plaintiff's claim for

13   Breach of Contract of Safe Passage fails to state a claim.

14         The Clerk is instructed to transfer the file in this case to the United States District Court for

15   the Southern District of Florida.

16         IT IS SO ORDERED.

17

18   Dated: August 24, 2006

19

20   _____
     JOSEPH C. SPERO

21   United States Magistrate Judge

22

23

24

25

26

---

27       [1]  Because the Court determines that transfer of this action is appropriate, it declines to rule on Defendant's argument that Plaintiff's claim for breach of the contract for safe passage should be

28   dismissed for failure to state a claim.